UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TASHONDA TROUPE, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:20-cv-01790-SRC |
| | ) |
| ANTHONY YOUNG, | ) |
| | ) |
|    Defendant. | ) |
| | ) |

**Memorandum and Order**

Tashonda Troupe seeks to hold Anthony Young accountable for the death of her son, Lamar Catchings. While in St. Louis County Jail, Catchings repeatedly complained of various maladies to nurse Anthony Young. Days after Catchings's last visit with Young, Catchings died. Troupe now sues Young pursuant to 42 U.S.C. § 1983 and the Eighth Amendment. Further, Troupe moves to exclude expert testimony stating that Catchings likely could not have survived his ailments.

**I.      Background**

Troupe argues that, if not for Young's alleged deliberate indifference toward Catchings's medical needs, Catchings could have received treatment for his leukemia and survived. *See* Doc. 29. She bases this argument on the medical examiner's findings that Catchings suffered from acute promyelocytic leukemia and that Catchings would have survived the disease with appropriate medical treatment. *See* Doc. 110 at p. 2 (citation omitted). Young has retained Dr. Michael Bolger to refute Troupe's contention that, but for Young's alleged indifference, Catchings could have received successful treatments for his luekemia. *See* Doc. 109 at ¶ 1; Doc. 109-1. Dr. Bolger argues that Catchings likely suffered from a more resilient form of

cancer than acute promyelocytic leukemia.  Doc. 109-1.  Troupe moves to exclude Dr. Bolger's testimony pursuant to Rule 702.  *See* Doc. 109.

## II.     Legal Standard

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the United States Supreme Court interpreted the then-effective version of Rule 702 of the Federal Rules of Evidence to require district courts to be certain that expert evidence based on scientific, technical, or other specialized knowledge is "not only relevant, but reliable."  509 U.S. 579, 590 (1993).  The district court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  *Id.* at 592–93.

> Post-*Daubert* amendments to Rule 702 clarify the standard:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also* Fed. R. Evid. 702 advisory committee's note to 2000 amendment ("Rule 702 has been amended in response to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, and to the many cases applying *Daubert* . . . ." (internal citation omitted)).

The Eighth Circuit has clarified the Rule 702 standard.  Proposed expert testimony must meet three criteria to be admissible under Rule 702.  "First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the

2

ultimate issue of fact. This is the basic rule of relevancy." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). "Second, the proposed witness must be qualified to assist the finder of fact." *Id.* (citation omitted). "Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires." *Id.* (internal quotation marks omitted). To meet the third criterion, the testimony must be "based on sufficient facts or data" and be "the product of reliable principles and methods," and the expert must have "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)–(d).

"Federal Rule of Evidence 702 reflects an attempt to liberalize the rules governing the admission of expert testimony." *Shuck v. CNH Am., LLC*, 498 F.3d 868, 874 (8th Cir. 2007) (citing *Lauzon*, 270 F.3d at 686). The rule "favors admissibility if the testimony will assist the trier of fact." *Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998). Doubt regarding "whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Id.* (citation and internal quotation omitted).

Under Rule 702, the trial court has gatekeeping responsibility to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (citing *Daubert*, 509 U.S. at 597). "When making the reliability and relevancy determinations, a district court may consider: (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operation; and (4) whether the theory or technique is generally accepted in the scientific community." *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012) (citing *Daubert*, 509 U.S. at 593–94). "This

3

evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject *Daubert* factors as the particular case demands." *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005). "There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant." *Id.*

As a general rule "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Nebraska Plastics, Inc. v. Holland Colors Americas, Inc.*, 408 F.3d 410, 416 (8th Cir. 2005) (quoting *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002)). However, "if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury, it must be excluded." *Id.* (citing *Hartley*, 310 F.3d at 1061). An expert opinion is fundamentally unsupported when it "fails to consider the relevant facts of the case." *Id.* With this standard in mind, the Court addresses Troupe's motion.

**III.     Discussion**

Young presents Dr. Bolger's opinion to rebut the medical examiner's diagnosis and prognosis. Doc. 109-1. Troupe's 702 motion focuses on Dr. Bolger's judgment regarding whether Catchings suffered from acute promyelocytic leukemia, which Dr. Bolger refers to as "APL." Doc. 109. Dr. Bolger noted that, given the details of the medical examiner's report, Catchings likely suffered from acute myelogenous leukemia, of which APL is a subtype. Doc. 109-1. Dr. Bolger argued that the report does not contain sufficient information to conclude that Catchings suffered specifically from APL. *Id.* at p. 1. He observed that the report did not specify which kind of stain the medical examiner used to test the cancerous cells, but opines that the most likely stain would not reliably indicate the existence of APL, as opposed to other forms of acute myelogenous leukemia. *Id.* Further, bone marrow and blood samples are

4

the best specimens to test for APL, but the medical examiner tested Catchings's liver. *Id.*  Dr. Bolger also spoke to a hematopathologist—an expert in blood-related diseases—who concurred that the information in the report does not suggest APL as the correct diagnosis. *Id.* at pp. 1–2. According to Dr. Bolger, relatively few cases of acute myelogenous leukemia are APL. *Id.* at p. 1.  Given that the information in the medical examiner's record does not suggest APL over the alternatives, Dr. Bolger deemed it unlikely that Catchings suffered from APL. *Id.* at p. 2. Thus, Dr. Bolger also questioned the medical examiner's finding that Catchings might have survived if he received medical treatment.

Troupe argues that Dr. Bolger's report fails to meet *Daubert*'s standard. First, Troupe contends that Dr. Bolger "openly acknowledges that he is simply *unqualified* to proffer his opinions on the issue at hand." Doc. 110 at p. 6. She states that, according to Dr. Bolger, "the question here is one of 'hematopathology,'" requiring training in this specialized field, but Dr. Bolger states that he is not a hematopathologist. *Id.*  Thus, Dr. Bolger fails to meet Rule 702's first requirement. *Id.*

Young responds that Dr. Bolger is qualified to testify as an expert in this case. Doc. 111 at pp. 3–5.  He describes Dr. Bolger's extensive qualifications in hematology and oncology. *Id.* at pp. 4–5.  Thus, Troupe's reference to Dr. Bolger's alleged admission that he lacks the proper qualifications misrepresents the record. *Id.* at p. 5.

The Court finds Troupe's first argument unpersuasive. Reviewing Dr. Bolger's report, the Court finds no statement indicating that Dr. Bolger lacks the proper qualifications or that only a hematopathologist has the expertise required to speak on the reliability of the medical examiner's diagnosis. *See* Doc. 119-2.  Dr. Bolger simply explains what a hematopathologist is, says he is not one, and says that he spoke to a hematopathologist about whether the medical

5

examiner's methods could reliably indicate that Catchings suffered from APL.  *Id.* at pp. 1–2.  Thus, Dr. Bolger did not undermine his own qualifications.

Second, Troupe impugns Dr. Bolger's methodology.  *Id.* at p. 6.  She argues that Dr. Bolger's methodology was to confer with a hematopathologist, pose him or her a hypothetical based on this case, and report the unnamed hematopathologist's reply.  *Id.*  According to Troupe, "[p]resenting this third party opinion based on a hypothetical without reviewing any of the histology that the St. Louis Medical Examiner reviewed and reported on is a complete absurdity."  *Id.*

Young disputes Troup's description of Dr. Bolger's methodology.  Doc. 111 at p. 5.  He notes Dr. Bolger's statement about the documents he reviewed before reaching his expert opinion.  *Id.*  Dr. Bolger based his conclusion on the relevant medical records and his experience as a hematologist and oncologist.  *Id.* at pp. 5–6.  And Young has attached to his brief an affidavit from Dr. Bolger, in which Dr. Bolger states that he based his opinion of Catchings's diagnosis on his training and experience, that he had already reached the opinion presented in his report before he spoke to the unnamed hematopathologist, and that the conversation had no influence on Dr. Bolger's opinions.  Doc. 111-3 at ¶¶ 2–4.

The Court rejects Troupe's argument.  Troupe's description of Dr. Bolger's methodology fails to address much of what Dr. Bolger says in his report about his methodology.  And the Court credits Dr. Bolger's statement that his conversation with the unnamed hematopathologist did not influence his conclusions, but in the end, this is a question of weight not admissibility that the jury will decide.  *See Nebraska Plastics*, 408 F.3d at 416 (citation omitted).

Third, Troupe argues that Dr. Bolger's expert opinion amounts to irrelevant speculation.  Doc. 111 at p. 7.  In response to Dr. Bolger's statement that the medical examiner's report does

6

not specify whether the stain used to test the cancerous cells would indicate that Catchings suffered from APL, Troupe concludes that "Dr. Bolger admit[ted] that he is without knowledge as to what test or immunohistochemistery . . . stain was used by the Medical Examiner's office" and cannot make a knowledgeable judgment regarding whether the medical examiner used a reliable test. *Id.* at p. 7–8.  "Dr. Bolger's speculative and conclusory 'guess' that the Medical Examiner might have been wrong again fails to satisfy the *Daubert* standard for expert testimony and opinion and will be of little to no use to the jury in this matter." *Id.* at p. 8.  Additionally, Troupe argues that Dr. Bolger should not present any conclusions based on gaps in the medical examiner's record, given that Dr. Bolger made no attempt to discover these details.  Doc. 119 at p. 6.  Thus, Dr. Bolger's expert opinion counts only as an inadmissible "guess." *Id.* at p. 7.

As the Court discusses above, "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Nebraska Plastics*, 408 F.3d at 416 (citation omitted).  Dr. Bolger believes that the medical examiner's report does not demonstrate that its APL diagnosis rests on a reliable test and that—in the absence of indications that Catchings suffered from APL—Catchings likely suffered from some other form of acute myelogenous leukemia.  *See* Doc. 199-2.  If Troupe wishes to cross-examine Dr. Bolger on why he thinks it unlikely that the medical examiner used a test that could reliably indicate APL, she may do so.  However, the Court does not find Dr. Bolger's opinion "so fundamentally unsupported that it can offer no assistance to the jury," and therefore will not exclude his expert testimony on this basis. *Nebraska Plastics*, 408 F.3d at 416 (citation omitted).

Fourth and finally, Troupe maintains that Dr. Bolger's opinion rests on "fallacy based on hasty generalization."  Doc. 199 at p. 7.  "Dr. Bolger's opinion is premised on some general

7

statistical 'fact' that '[n]otably, only approximately 10% to 15% of all [acute myelogenous leukemia] is APL." Doc. 100 at p. 8 (citation omitted) (first alteration in original). This general statistic has no bearing on the likelihood that Catchings suffered from APL, given the specific details of this case, according to Troupe.

Again, the Court does not find this argument sufficient to exclude Dr. Bolger's opinion testimony. Dr. Bolger's reasoning runs as follows: (1) The medical examiner's report does not indicate what stain it used to test the cancerous cells, and it likely did not use a stain that would distinguish APL; (2) the medical examiner tested Catchings's liver and pancreas, but bone marrow and blood are the appropriate specimens to test for APL; (3) thus, the medical examiner's report does not support a diagnosis of APL; (4) in the absence of evidence of APL, Catchings probably suffered from some other form of acute myelogenous leukemia; (5) therefore, Catchings probably suffered from some other form of acute myelogenous leukemia. *See* Doc. 110. While Troupe may reject one or more of these premises, a jury could reasonably find that Dr. Bolger's premises support his conclusion. Contra Troupe, Dr. Bolger's opinion of the medical examiner's diagnosis does not rest on a "fallacy," Doc. 199 at p. 7, and the Court finds no basis to deem his testimony inadmissible, again finding this is an issue of weight not admissibility. *Nebraska Plastics*, 408 F.3d at 416 (citation omitted).

**IV.    Conclusion**

The Court finds unpersuasive Troupe's various arguments that Dr. Bolger's expert opinion runs afoul of Rule 702. Any flaws in the factual basis of Dr. Bolger's expert opinions go to the weight the jury will assign those opinions, not their admissibility. *Nebraska Plastics*, 408 F.3d at 416 (citation omitted). Accordingly, the Court denies Troupe's [109] Motion to Strike.

8

So Ordered this 25th day of October, 2023.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE